JEFFREY A. SWEDO  (SBN: 78361)
GORDON & REES LLP
4675 MacArthur Court, Suite 800
Newport Beach, CA  92660
Telephone:  (949) 255-6950
Facsimile:  (949) 474-2060

Email:  *jswedo@gordonrees.com*

Attorneys for Defendant
SYMBOLIC INTERNATIONAL, INC.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

RICHARD EDWARDS, dba EUROTRADING,

Plaintiff,

vs.

SYMBOLIC INTERNATIONAL, INC.,

Defendant.

**CASE NO. 07CV1826-JMA**

**SYMBOLIC INTERNATIONAL, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Date:      April 20, 2009
Time:      10:00 a.m.
Ctrm:      D
Judge:     Hon. Jan M. Adler

Defendant SYMBOLIC INTERNATIONAL, INC. ("Symbolic" or "Defendant") submits the following memorandum of points and authorities in opposition to the motion for summary judgment filed by plaintiff RICHARD EDWARDS, dba EUROTRADING ("Edwards" or "Plaintiff").

///

///

///

Gordon & Rees LLP
4675 MacArthur Court, Suite 800
Newport Beach, CA 92660

SYMBOLIC INTERNATIONAL, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

1

**TABLE OF CONTENTS**

2

**I.**   **INTRODUCTION** ............................................................................1

3

**II.**   **SUMMARY OF ARGUMENT** ......................................................1

4

**III.**   **STATEMENT OF DISPUTED FACTS** ......................................3

5

   **A.**   **THE EXTENT OF THE PRELIMINARY NEGOTIATIONS
         BETWEEN THE PARTIES.** ...............................................3

6

   **B.**   **TIME WAS OF THE ESSENCE IN THE CONTRACT.** ....5

7

**IV.**   **LEGAL ARGUMENT** ....................................................................6

8

   **A.**   **PLAINTIFF'S CLAIMS FOR RELIEF RELY ON THE
         ERRONEOUS CONTENTION THAT THE LIQUIDATED
         DAMAGES PROVISION IS UNENFORCEABLE.** .............6

9

10

   **B.**   **PLAINTIFF MISINTERPRETS AND MISAPPLIES CIVIL CODE
         1671, AND CITES INAPPLICABLE AUTHORITY.** ...........7

11

12

      **1.**   **Plaintiff's Cited Cases Decided Prior to the 1978 Amendment
            of Civil Code Section 1671, as Well as "Consumer Cases"
            Decided Under the Amended Statute But Applying Subsection
            (d), Are Inapplicable.** ..........................................................8

13

14

   **C.**   **A PROPER READING AND APPLICATION OF CIVIL CODE
         §1671 INDICATES THAT PLAINTIFF CANNOT ESTABLISH
         THAT THE LIQUIDATED DAMAGES PROVISION WAS
         UNREASONABLE AT THE TIME OF THE CONTRACT.** ........9

15

16

      **1.**   **Plaintiff Cannot Show That There Was "No Reasonable
            Relationship" Between the Liquidated Damages Figure and the
            Actual Damages the Parties Could Have Anticipated Would
            Flow From Breach.** ..............................................................9

17

18

19

      **2.**   **The "Reasonable Endeavor" Requirement Does Not Require
            Actual, Explicit Negotiations Over the Amount of the
            Liquidated Damages Figure.** ..............................................11

20

21

      **3.**   **Only Circumstances in Existence at the Time of Contracting
            Should Be Considered in Assessing Reasonableness of a
            Liquidated Damages Provision.** ...........................................12

22

23

      **4.**   **Time Was of the Essence in the Contract.** ...........................13

24

   **D.**   **THE BALANCE OF THE CASES CITED BY PLAINTIFF,
         THOUGH APPLYING THE CORRECT TEST, ARE OTHERWISE
         DISTINGUISHABLE OR SUPPORT SYMBOLIC'S CONTENTION
         THAT THE LIQUIDATED DAMAGES PROVISION WAS
         REASONABLE.** ...............................................................14

25

26

27

**V.**   **CONCLUSION** .............................................................................17

28

**Gordon & Rees LLP**
**4675 MacArthur Court, Suite 800**
**Newport Beach, CA 92660**

i                                              Case No. 07CV1826-JMA

SYMBOLIC INTERNATIONAL, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Gordon & Rees LLP
4675 MacArthur Court, Suite 800
Newport Beach, CA 92660

# TABLE OF AUTHORITIES

## Cases

*Allen v. Smith* 94 Cal.App.4th 1270 (2002) ...................................................................15

*California Medical Ass'n, Inc. v. Aetna U.S. Healthcare of Calif.* 94 Cal.App.4th 151(2001)......7

*Donald v. Golden 1 Credit Union* 839 F.Supp. 1394 (E.D. Cal. 1993)........................................9

*ECM Converting Co. v. Corrigated Supplies Co. LLC*, 2009 U.S. Dist. Lexis 12424.................16

*Feary v. Aaron Burglar Alarm, Inc.* 32 Cal.App.3d 553 (1973).......................................9

*Greentree Financial Group, Inc. v. Execute Sports, Inc.* 163 Cal.App.4th 495 (2008) .........15, 16

*Henck v. Lake Hemet Water Co.* (1937) 9 Cal.2d 136...........................................................3, 13

*Hong v. Somerset Associates*, 161 Cal.App.3d 111 (1984)..........................................................11

*In re VEC Farms, LLC* 395 B.R. 674 (Bkrtcy. N.D. Cal. 2008) ..........................................11, 12

*Irwin v. Mascott* 96 F.Supp.2d 968 (N.D. Cal. 1999);.............................................................9

*Marina Tenants Assn. v. Deauville Marina Dev. Co.*, 181 Cal.App.3d 122 (1986)......................7

*Morris v. Redwood Empire Bancorp* 128 Cal.App.4th 1305 (2005) .......................................15

*Poseidon Development, Inc. v. Woodland Lane Estates, LLC* 152 Cal.App.4th 1106 (2007)......14

*Radisson Hotels Intern., Inc. v. Majestic Towers, Inc.* 488 F.Supp.2d 953 (C.D. Cal. 2007) ......16

*Ridgley v. Topa Thrift and Loan Ass'n* 17 Cal.4th 970, 977 (1998)........................................9

*See Silva & Hill Const. Co v. Employers' Mutual Liability Ins. Co.* 19 Cal.App.3d 914 (1971)..7, 8

*Sybron Corp. v. Clark Hosp. Supply Corp.* (1978) 76 Cal.App.3d 896.....................................16

*United Sav. and Loan Ass'n of Calif. v. Reeder Development Corp.* 57 Cal.App.3d 282 (1976)...9

*Utility Consumers' Action Network, Inc. v. AT&T Broadband of Southern Cal., Inc.*, 135 Cal.App.4th 1023 (2006)..............................................................................3, 9, 11, 12

*Weber, Lipshie & Co. v. Christian* 52 Cal.App.4th 645 (1997).............................................2, 12

## Statutes

Civil Code section 1671 ...........................................................2, 6, 7, 9, 11, 13, 14, 15

Civil Code section 1675 ..................................................................................................15

Commercial Code section 2718.........................................................................................6

Case No. 07CV1826-JMA

1

**Other Authorities**

2

Rest. 2d Contracts § 242 ................................................................................3, 13

3

Law Revision Commission Comments to Cal Civ. § 167 .........................................8

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gordon & Rees LLP
4675 MacArthur Court, Suite 800
Newport Beach, CA 92660

**SYMBOLIC INTERNATIONAL, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

On July 11, 2007, Plaintiff and Symbolic entered into a one page written contract for the purchase and sale ("Contract") of a rare, vintage, 1959 model year Ferrari 250GT California Spyder LWB ("subject Ferrari").  The Contract, drafted by Plaintiff and his English solicitor, provided that Plaintiff was to pay Symbolic a $300,000 non-refundable, liquidated damages deposit to secure the deal and pay the $2.8 million balance by a date certain.  Plaintiff paid Symbolic the $300,000 deposit, but thereafter breached the Contract by failing to pay Symbolic the balance of the purchase price by the date certain set forth in the Contract.  The Contract also provided as follows:  "In the event that the Buyer fails to complete upon being given notice to complete then the Seller will retain the deposit by way of liquidated damages for breach of contract."  In accordance with this provision, Symbolic retained the $300,000 deposit as liquidated damages for Plaintiff's breach.

Despite the clear contract language drafted by Plaintiff himself with the assistance of his solicitor, and despite the fact that Plaintiff was the breaching party, Plaintiff now claims that he is entitled to the return of the $300,000 liquidated damages deposit due to events at two auctions which changed the market for this car six weeks *after* the contract was negotiated.  However, the law is clear that liquidated damages are evaluated as of the time of contracting, and not with 20:20 hindsight based on subsequent events.

## II.   SUMMARY OF ARGUMENT

Plaintiff's motion for summary judgment not well-taken, and all factors weigh heavily in favor of the Court granting *Symbolic's* concurrent motion for summary judgment.  Plaintiff relies on sympathy based on unanticipated market change in Symbolic's favor six weeks after the contract was executed.  Plaintiff's claims for relief each relies on his contention that the liquidated damages provision in question is invalid.  California Civil Code section 1671 provides that contractual provisions liquidating damages for breach are *presumptively valid* unless the party seeking to invalidate the provision (i.e. Plaintiff) meets a substantial burden of showing the provision was unreasonable in light of the circumstances at the time of contracting.  Plaintiff has

Gordon & Rees LLP
4675 MacArthur Court, Suite 800
Newport Beach, CA 92660

not met this burden.  Application of this section to the matter at hand indicates not only that Plaintiff cannot prevail on a motion for summary judgment, but also that his claims fail as a matter of law.  The following is clear:

(1)     Civil Code section 1671 was amended effective July 1, 1978 in favor of the California Legislature's express public policy enforcing liquidated damages provisions.  The amended test in Civil Code section 1671(b) places a substantial burden on the party challenging a liquidated damages provision.  The former stricter test was not eliminated, but is now set forth in Civil Code section 1671(d).  This narrow test only applies to the two specific types of contracts set forth in section 1671(c), which do not apply here.  Thus,  Plaintiff's citation and reference to cases decided prior to the 1978 amendment, or to cases applying the test in subdivision (d), is inappropriate and must be stricken.  In sum, Plaintiff is relying on the wrong law.

(2)     Plaintiff is mistaken that the liquidated damages provision here is unreasonable because Symbolic ultimately sold the subject Ferrari at a profit.  In determining the reasonableness of a liquidated damages provision, the Court may only consider those circumstances in existence at the time the contract was made (here, July 11, 2007), and not how the provision appears in retrospect.  As the court wrote in *Weber, Lipshie & Co. v. Christian* 52 Cal.App.4th 645, 654 (1997), "The amount of damages actually suffered has no bearing on the validity of the liquidated damages provision."

(3)     Plaintiff is also mistaken in his claim that the liquidated damages provision is unreasonable because the parties did not "discuss the issue of the damages [Symbolic] would, or might, incur should Plaintiff fail to timely purchase the Ferrari."  This contention not only ignores several undisputed material facts regarding discussions actually had between the parties, but it also misapplies the law.  Indeed, while a liquidated damages figure must approach a "reasonable endeavor" by the parties to estimate losses that might be sustained, this requirement does not mean the parties must expressly negotiate the liquidated damages figure.  Rather, where a liquidated damages provision *is* reasonable in light of the potential actual harm, it is presumed to have resulted from a reasonable endeavor to estimate actual harm, and it is therefore valid.

Gordon & Rees LLP
4675 MacArthur Court, Suite 800
Newport Beach, CA 92660

Case No. 07CV1826-JMA

**SYMBOLIC INTERNATIONAL, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

1   *Utility Consumers' Action Network, Inc. v. AT&T Broadband of Southern Cal., Inc.*, 135

2   Cal.App.4th 1023, 1035-8 (2006).  Here, Defendant stood to lose money, and also its profits, on

3   the subject Ferrari.  In a best case scenario, Symbolic would have had to surrender its own

4   $200,000 deposit it paid to acquire the rights to the sell the car to Plaintiff.

5       (4)    Finally, Plaintiff claims that his failure to timely pay the balance of the purchase

6   price is not a material breach of contract because the Contract did not contain an explicit "time of

7   the essence" clause.  Again, Plaintiff has misinterpreted the applicable law.  Time is of the

8   essence in all contracts where the circumstances indicate that performance on a particular day is

9   important.  *Henck v. Lake Hemet Water Co.* (1937) 9 Cal.2d 136, 143; Rest. 2d Contracts § 242.

10  Here, Symbolic made it repeatedly and abundantly clear to Plaintiff that timing was critical on

11  this deal, and entered the Contract only upon Plaintiff's agreeing to Symbolic's specific

12  timetable.  The Contract also specified a date certain by which final payment needed to be made.

### III.   STATEMENT OF DISPUTED FACTS

13

14      Symbolic has filed its own motion for summary judgment in this matter which sets forth

15  a complete statement of facts along with citations to evidence.  Rather than recite these facts,

16  Symbolic incorporates by reference its statement of facts and supporting evidence filed in

17  connection with its motion for summary judgment filed on March 10, 2009.  (*See* Symbolic's

18  Request for Judicial Notice).  The following constitutes a summary of key areas in which

19  Plaintiff's factual statement is particularly misleading or incomplete.  Indeed, the undisputed

20  documentary record show the parties engaged in significant preliminary negotiations and give-

21  and-take prior to executing the final Contract.

22  **A.**   **THE EXTENT OF THE PRELIMINARY NEGOTIATIONS BETWEEN THE**

23      **PARTIES.**

24      Symbolic's salesman, Elliot Grossman, officially began price negotiations with Plaintiff

25  for the sale of the subject Ferrari only after Symbolic had confirmed its ability to acquire the

26  vehicle by purchasing it from another Symbolic customer.  Grossman told Plaintiff that Symbolic

27  had to acquire the subject Ferrari from a third party owner before it could sell it to Plaintiff.  At

28  no time did Grossman indicate to Plaintiff that Symbolic was acting as a "broker" in the

Gordon & Rees LLP
4675 MacArthur Court, Suite 800
Newport Beach, CA 92660

**SYMBOLIC INTERNATIONAL, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

1   transaction.  In fact, the opposite was true.  Symbolic had to purchase the Ferrari from its own

2   customer.  It is important that Symbolic had to acquire the vehicle from a customer before selling

3   it to Plaintiff, because Symbolic stood to suffer its own significant damages if Plaintiff backed

4   out of the deal.

5       Symbolic had to pay its own $200,000 non-refundable deposit to its customer to purchase

6   the Ferrari.  At best, if Plaintiff backed out of the deal, Symbolic would be able to avoid paying

7   its customer the full purchase price, but would lose its $200,000 deposit. At worst, Symbolic's

8   customer would force Symbolic to complete the deal and pay the $2,785,000 purchase price.

9   Symbolic felt this price was well over the market value for the car and feared that if Plaintiff

10  breached it would have to "wear the car," and ultimately resell it to a third party at a loss.

11  Further, Symbolic would lose its profit.  Symbolic proceeded with the deal in reliance on the fact

12  that it could fall back on Plaintiff's deposit if Plaintiff did not complete the deal.  Plaintiff had no

13  contigency rights once he paid his deposit.

14      After Symbolic obtained the rights to acquire the vehicle, Symbolic and Edwards came to

15  terms on the purchase price and amount of deposit.  Plaintiff agreed to purchase the subject

16  Ferrari from Symbolic subject to the car passing Plaintiff's inspection and subject to the specific

17  terms set forth in the contract for purchase and sale (including terms regarding timing of

18  payments; see the section below entitled "Time Was of the Essence...").  The price terms on

19  which the parties settled were a $3,100,000 total purchase price consistitng of a $300,000 non-

20  refundable deposit to secure the deal and the $2,800,000 balance due on August 13, 2007.

21      Plaintiff was well aware that his initial $300,000 deposit was non-refundable, and would

22  be retained by Symbolic as liquidated damages if Plaintiff breached.  In fact, it was Plaintiff,

23  with the assistance of his former English solicitor, who drafted the two initial offer letters, a first

24  proposed contract, and the final Contract which contained the liquidated damages provision.  In

25  Plaintiff's initial discussions with Grossman, including a handwritten letter Plaintiff sent to

26  Grossman on July 8, 2007, Plaintiff used the term "non-refundable deposit" to describe the

27  $300,000 payment.  In the subsequent typewritten letter Plaintiff sent on the same date, he used

28  the term "non-refundable purchase option."  Then, in both the July 9 initial draft of the Contract,

**SYMBOLIC INTERNATIONAL, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

as well as the final executed version of the Contract dated July 11, 2007, Plaintiff used the phrase "liquidated damages" to characterize the $300,000 non-refundable deposit.  In all cases, it was clear to everyone involved that Plaintiff would not receive a refund of his deposit in the event of his breach.

Finally, and importantly, Plaintiff testified that he thought the $300,000 deposit was reasonable considering it was about 10% of the total purchase price, and because 10% is a customary figure for non-refundable deposits on purchases of expensive vintage vehicles.

**B.    TIME WAS OF THE ESSENCE IN THE CONTRACT.**

From the inception of his conversations with Plaintiff, Grossman was explicit that time was of the essence in the transaction.  The parties negotiated and changed working days to calendar days.  Eventually, they agreed that Plaintiff would pay the non-refundable deposit by July 18, 2007, and that he had to pay the balance of the purchase price by August 13, 2007.  Grossman had no flexibility with respect to this time deadline, which is evidenced by the fact that Symbolic on numerous occasions rejected Plaintiff's proposed time deadlines for a later final payment, insisting the August 13, 2007 date was a hard date.

Prior to settling on the August 13, 2007 date for final payment, the parties went through negotiations.  On July 8, 2007, Plaintiff provided to Symbolic an initial handwritten offer letter in which he wrote that the balance of the purchase price was to be due in "30 **working** days." Symbolic unconditionally rejected this term.  That same day, Plaintiff sent another offer letter (typewritten) in which this term was changed to "30 **calendar** days," a much shorter time period in which Plaintiff had to pay the balance.  On July 9, 2007, Plaintiff sent to Symbolic a first draft contract, but the payment deadlines set forth therein were not the terms to which Symbolic had agreed, and Symbolic rejected this draft.  Plaintiff then prepared what would become the final Contract for purchase and sale, dated July 11, 2007, which stated explicitly that the balance of the purchase price was due from Plaintiff on or before August 13, 2007.

**C.    The Parties Disagreed Significantly Over the Value of the Subject Ferrari.**

Symbolic had concerns regarding the future market value for the subject Ferrari.  If market went down, or remained flat, Symbolic would lose significant money if Plaintiff

Gordon & Rees LLP
4675 MacArthur Court, Suite 800
Newport Beach, CA 92660

**SYMBOLIC INTERNATIONAL, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Gordon & Rees LLP
4675 MacArthur Court, Suite 800
Newport Beach, CA 92660

breached.  Symbolic feared that it was significantly overpaying its customer $2,785,000 to acquire the car.  It would not have bought the Ferrari from its customer absent the fact the Ferrari was "pre-sold" to Plaintiff.  Months earlier, Symbolic turned down an offer to buy the same car for $2.4 million, plus commission, which was considerably less than the $2.785 million price tag. After Plaintiff paid his non-refundable deposit and received Plaintiff's other assurances that he was a serious buyer, Symbolic agreed to proceed.  At the time of the Contract, Symbolic did not know if two other similiar Ferraris would sell at the upcoming Pebble Beach auction six weeks later, or for what price.  In fact, Symbolic feared that the value of the subject Ferrari would actually go *down* if the two similar cars did not sell at this car show, or sold at their reserve prices.  When these cars did sell at the show for record prices, the market for the subject Ferrari went up signficantly.  Of course, six weeks earlier this was not known.

## IV.   LEGAL ARGUMENT

**A.   PLAINTIFF'S CLAIMS FOR RELIEF RELY ON THE ERRONEOUS CONTENTION THAT THE LIQUIDATED DAMAGES PROVISION IS UNENFORCEABLE.**

Plaintiff alleges two claims for relief in this lawsuit:  (1) Rescission and Restitution; and (2) Unjust Enrichment.  Both claims for relief rely entirely on Plaintiff's contention that the liquidated damages provision is unenforceable under Civil Code section 1671.  Because Plaintiff cannot show that the liquidated damage provision was unreasonable, he cannot establish either claim for relief and this motion for summary judgment must be denied.

In his motion, Plaintiff questions the validity of the liquidated damages provision under Civil Code section 1671, and goes on to state:  "Upon a finding that the 'liquidated damages' provision does not comply with [1671], the court can, and should, award plaintiff restitution of his deposit."  Plaintiff's Motion, p. 12:21-23, citing Cal. Comm. § 2718(2).  Indeed, Commercial Code section 2718 provides that "remedy may be had as provided in this division" (restitution) if a liquidated damages provision "does not comply with Section 1671 of the Civil Code."  Thus, unless Plaintiff can establish as a matter of law that the liquidated damages provision was unreasonable at the time of contracting, he is not entitled to restitution under this theory.

1    In his motion, Plaintiff later states:  "Unjust enrichment requires restitution if, under the

2    circumstances, it would be unjust for a party to retain the benefit that it received from another."

3    Plaintiff does not provide any further discussion on the issue of unjust enrichment, making it

4    clear that this claim also relies on the contention that the liquidated damages provision is

5    unenforceable.  However, unjust enrichment is typically a matter of quasi-contract, and an action

6    for unjust enrichment does not lie, as a matter of law, where an express binding agreement exists

7    and defines the parties' rights.  *California Medical Ass'n, Inc. v. Aetna U.S. Healthcare of Calif.*

8    94 Cal.App.4th 151, 172 (2001); *see also Marina Tenants Assn. v. Deauville Marina Dev. Co.*,

9    181 Cal.App.3d 122, 134 (1986).  Accordingly, Plaintiff is not entitled to restitution on a theory

10   of unjust enrichment.  Any restitution claim, therefore, must rely on an analysis of Civil Code

11   section 1671.

12       As set forth below, Plaintiff cannot show that the liquidated damages provision in

13   question is unenforceable under Civil Code section 1671, and he is therefore not entitled to

14   summary judgment.  Moreover, an application of section 1671 indicates that Plaintiff *cannot*

15   establish his claims, and therefore the Court should grant Symbolic's separate pending motion

16   for summary judgment and dismiss Plaintiff's lawsuit.

**B.    PLAINTIFF MISINTERPRETS AND MISAPPLIES CIVIL CODE 1671, AND**

18       **CITES INAPPLICABLE AUTHORITY.**

19       Plaintiff's motion is not well-taken considering he applies the wrong test for the validity

20   of liquidated damages, and cites to cases that are inapplicable to the matter at hand.  California

21   Civil Code section 1671 was amended in 1978 in favor of a policy enforcing liquidated damages

22   provisions in contracts.  Plaintiff's citations to older cases refers to a statute that has been

23   superseded.  The former section 1671 provided:  "The parties to a contract may agree therein

24   upon an amount which shall be presumed to be the amount of damage sustained by a breach

25   thereof, when, from the nature of the case, it would be impracticable or extremely difficult to fix

26   the actual damage."  *See Silva & Hill Const. Co v. Employers' Mutual Liability Ins. Co.* 19

27   Cal.App.3d 914, 919 fn. 2 (1971).

28       In enacting the 1978 amendment, the Legislature intended to alter this test to effectuate

Gordon & Rees LLP
4675 MacArthur Court, Suite 800
Newport Beach, CA 92660

7

more widespread judicial enforcement of liquidated damages provisions.  *See* Law Revision Commission Comments to Cal Civ. § 1671, 1977 Amendment (effective July 1978).  The current test, which applies to the majority of commercial contracts, including that between Plaintiff and Symbolic, can be found in Civil Code section 1671, subsection (b), which provides:  "a provision in a contract liquidating the damages for the breach of the contract is valid unless the party seeking to invalidate the provision establishes that the provision was unreasonable under the circumstances existing at the time the contract was made."  The new test places a significant burden on the party challenging a liquidated damages provision, and eliminates the requirement to show that fixing actual damages was impracticable or extremely difficult.

The Legislature did not entirely do away with the stricter test of the former section 1671. In the amended statute, subsection (d) sets forth the former test, but the statute expressly provides that this test shall apply *only* in two specific types of **consumer contracts** enumerated in subsection (c):  (1) contracts for the sale or rental of personal property to be used primarily for the buyer's personal, family, or household purposes; and (2) contracts for the lease of real property.  Here, Plaintiff admits he is a car dealer and purchased the subject Ferrari only for commercial purposes in order to resell it for a profit.  Therefore, the subsection (d) test is not applicable, and subsection (b) controls.

Plaintiff's application of the former test for validity of liquidated damages is inappropriate.  Moreover, his extensive citations and references to cases applying the former test (whether those decided prior to the 1978 amendment, or those involving a consumer case under the current subsection (d)), are inappropriate and must be disregarded.

> **1.    Plaintiff's Cited Cases Decided Prior to the 1978 Amendment of Civil Code Section 1671, as Well as "Consumer Cases" Decided Under the Amended Statute But Applying Subsection (d), Are Inapplicable.**

Each of the following cases cited by Plaintiff were decided prior to the 1978 amendment of Civil Code section 1671, and are therefore patently inapplicable to a determination of whether the liquidated damages provision in this case is valid:  *Silva & Hill const. Co v. Employers' Mutual Liability Ins. Co.* 19 Cal.App.3d 914 (1971); *Feary v. Aaron Burglar Alarm, Inc.* 32

Gordon & Rees LLP
4675 MacArthur Court, Suite 800
Newport Beach, CA 92660

**SYMBOLIC INTERNATIONAL, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

1   Cal.App.3d 553 (1973); *United Sav. and Loan Ass'n of Calif. v. Reeder Development Corp.* 57

2   Cal.App.3d 282 (1976).

3       Plaintiff also relies heavily on *Utility Consumers' Action Network, Inc. v. AT&T*

4   *Broadband of Southern Cal., Inc.*, 135 Cal.App.4th 1023, 1035-8 (2006) ("*Utility Consumers*").

5   However, this case explicitly applies the test of Civil Code section 1671, subsection (d), in the

6   context of a *consumer contract*.  As already discussed, this test is inapplicable here.  Other cases

7   cited by Plaintiff in which the subsection (d) test is applied are:  *Irwin v. Mascott* 96 F.Supp.2d

8   968 (N.D. Cal. 1999); *Donald v. Golden 1 Credit Union* 839 F.Supp. 1394 (E.D. Cal. 1993).

9   **C.   A PROPER READING AND APPLICATION OF CIVIL CODE §1671**

10       **INDICATES THAT PLAINTIFF CANNOT ESTABLISH THAT THE**

11       **LIQUIDATED DAMAGES PROVISION WAS UNREASONABLE AT THE TIME**

12       **OF THE CONTRACT.**

13       **1.   Plaintiff Cannot Show That There Was "No Reasonable Relationship"**

14           **Between the Liquidated Damages Figure and the Actual Damages the Parties**

15           **Could Have Anticipated Would Flow From Breach.**

16       The California Supreme Court has held that a liquidated damages clause will be

17   considered unreasonable under Civil Code section 1671(b) and therefore unenforceable "if it

18   bears no reasonable relationship to the range of actual damages that the parties could have

19   anticipated would flow from a breach."  *Ridgley v. Topa Thrift and Loan Ass'n* 17 Cal.4th 970,

20   977 (1998).  With respect to this requirement, Plaintiff argues that because he agreed to purchase

21   the subject Ferrari in a "rising market," Symbolic actually stood to suffer no damages if Plaintiff

22   breached, rendering the $300,000 figure unreasonable.

23       Plaintiff's argument that a buyer in a "rising market" can simply back out of a contract

24   with no penalty because the seller can then sell to a third party, presumably for more than the

25   price in the original contract, is illogical.  First, this approach ignores the fact that the seller

26   suffers harm as a result of the breach regardless of whether the seller can sell to a third party

27   thereafter.  Indeed, here Symbolic stood to incur significant carrying costs, reconditioning costs,

28   and interest until it sold the car, and also stood to have to expend additional money and resources

Gordon & Rees LLP
4675 MacArthur Court, Suite 800
Newport Beach, CA 92660

9

**SYMBOLIC INTERNATIONAL, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

in order to negotiate the subsequent sale with a third party.  More significantly, in July 2007, the economic bubble in America was ready to burst.  In vintage cars, this issue in July 2007 was a clear and present danger.  Symbolic knew the market could turn before or after the Pebble Beach auction ON August 17-19, 2007.  What Symbolic could not predict was whether that turn would be up or down.  A down turn, or even a flat market, assured Symbolic of a certain loss on this Ferrari.

Next, Symbolic disputes the fact that there was a rising market for the subject Ferrari at the time of the Contract.  Symbolic feared that it was significantly overpaying its customer for the car, and agreed to do so only upon receiving Plaintiff's $300,000 non-refundable deposit and assurances that he was a serious buyer.  But for Plaintiff's non-refundable deposit, Symbolic never would have purchased the Ferrari.  At the time of the Contract, Symbolic feared that the value of the subject Ferrari could actually go *down*, or at best remain flat, depending on the results of the Concours d'Elegance auctions coming up six weeks later in late August 2007.  At the time of this Contract, Plaintiff was an optimist, betting on a market uptick.  If Plaintiff gambled wrong, and the market went down, Plaintiff could "walk" from this deal for a 10% loss. If the market went down, and he let Symbolic retain the car, Symbolic faced (1) loss of its $300,000 profit (10%) if it could find a buyer to pay what it paid for the car, or (2) losses for even more if it sold the car for less than the $2,785,000 it had to pay.

In the course of their negotiations, Grossman made it clear to Plaintiff that Symbolic would  to suffer six figure damages if Plaintiff did not complete the deal.  This referred to the fact Symbolic stood to lose its own $200,000 non-refundable deposit that it had committed to its customer to purchase the Ferrari in the first place.  Further, Symbolic risked that the customer would force Symbolic to complete the sale and pay the balance of the $2,785,000 purchase price. Symbolic felt this figure was over the retail value for the vehicle, and feared it would have to ultimately resell the car to a third party at a loss if Plaintiff breached.  Symbolic only proceeded with the deal in reliance on the fact that it could fall back on Plaintiff's deposit as a loss cushion if Plaintiff did not complete the deal.

There are numerous factors indicating that the $300,000 liquidated damages figure was

**SYMBOLIC INTERNATIONAL, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Gordon & Rees LLP
4675 MacArthur Court, Suite 800
Newport Beach, CA 92660

1   reasonable in light of the circumstances existing and known to the parties at the time the Contract

2   was entered.  There are no factors to the contrary.  *See Hong v. Somerset Associates*, 161

3   Cal.App.3d 111, 115 (1984) [liquidated damages figure was reasonable where the buyers were

4   sophisticated purchasers and the seller would sustain damages on account of the buyer's

5   breach][1].  Plaintiff is mistaken in claiming otherwise, and as set forth below, the authority he

6   cites in support of his claim is inapplicable.

7          **2.**       **The "Reasonable Endeavor" Requirement Does Not Require Actual, Explicit**

8                          **Negotiations Over the Amount of the Liquidated Damages Figure.**

9          Some courts have discussed whether a liquidated damages figure is the "result of a

10  reasonable endeavor by the parties to estimate fair compensation for the expected loss."  *In re*

11  *VEC Farms, LLC* 395 B.R. 674, 685 (Bkrtcy. N.D. Cal. 2008); *Utility Consumers,* 135

12  Cal.App.4th at 1035-8.  However, this "reasonable endeavor" evaluation applies within the

13  consumer context.  *In re VEC Farms, LLC* 395 B.R. at  691 [noting that the *Utility Consumers*

14  case was a "consumer case" decided under Civil Code section 1671(d)].  Even if this factor were

15  to apply to commercial contracts like that between Symbolic and Plaintiff, the test <u>does not</u>

16  <u>require proof of actual subjective negotiation of the amount of liquidated damages</u>.  *Id*.; *see also*

17  *Utility Consumers,* 135 Cal.App.4th at 1035-8.  Rather, the reasonableness of the liquidated

18  damages figure in light of the potential actual harm conclusively determines whether a

19  reasonable endeavor to estimate fair compensation was made despite the fact that no actual

20  negotiations took place regarding the liquidated damages figure.  *Id.*  In other words, Plaintiff is

21  incorrect in asserting the liquidated amount must be fixed by actual back and forth negotiations.

22         Plaintiff claims that the liquidated damages provision here is necessarily unreasonable

23  because the parties did not "discuss the issue of the damages [Symbolic] would, or might, incur

24  _____

[1] The Law Revision Commission has proposed the following factors to determine the reasonableness of a liquidated damages provision (Law Revision Commission Comments to Cal Civ. § 1671, 1977 Amendment):

25       1.  The relationship the damages provided in the contract bear to the range of harm that reasonable could be anticipated at the time of the making of the contract;

26       2.  The relative equality of the bargaining power of the parties;

27       3.  Whether the parties were represented by lawyers at the time the contract was made;
     4.  The anticipation of the parties that proof of actual damages would be costly or inconvenient;

28       5.  The difficulty of proving causation and foreseeability; and
     6.  Whether the liquidated damages provision is included in a form contract.

SYMBOLIC INTERNATIONAL, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Gordon & Rees LLP
4675 MacArthur Court, Suite 800
Newport Beach, CA 92660

should Plaintiff fail to timely purchase the Ferrari."  This contention not only ignores several

material facts regarding discussions actually had between the parties, but it also misapplies the

law.  Indeed, where a liquidated damages figure must represent a "reasonable endeavor" by the

parties to estimate losses that might be sustained, this requirement does not mean the parties

must expressly negotiate the liquidated damages figure.  Rather, where a liquidated damages

provision is reasonable in light of the potential actual harm, it must necessarily be presumed to

have resulted from a reasonable endeavor to estimate the actual harm, and is therefore valid.  *In

re VEC Farms, LLC* 395 B.R. at  691; *Utility Consumers*, 135 Cal.App.4th at 1035-8.

Finally, here Plaintiff himself, with the help of his longtime English solicitor and current

employee Bill Ranson, drafted the terms of his own Contract including the $300,000 liquidated

damages provision.  For Plaintiff to now claim that figure is unreasonable because the parties did

not specifically negotiate it is, at best, unfounded.

### 3.  Only Circumstances in Existence at the Time of Contracting Should Be Considered in Assessing Reasonableness of a Liquidated Damages Provision.

In determining the reasonableness of a liquidated damages provision, the Court should

consider only those circumstances in existence at the time the contract was made, and not how

the provision appears in retrospect.  *Weber, Lipshie & Co. v. Christian* 52 Cal.App.4th 645, 654

(1997).  Plaintiff claims that the liquidated damages provision is unreasonable here because

Symbolic "suffered no damages at all but instead received a windfall profit."  Again, Plaintiff

misapplies the applicable law, and misinterprets the purpose of a liquidated damages provision.

In *Weber*, the court clearly wrote:  "The amount of damages actually suffered has no bearing on

the validity of the liquidated damages provision."  After events, such as what occurred here, are

irrelevant.  The Contract must be tested as of when it was made.

Under *Weber*, and according to the Law Revision Commission Comments to the 1978

Amendment to Civil Code section 1671, the fact that Symbolic ultimately sold the vehicle to a

third party at a higher price than it had contracted to sell it to Plaintiff is totally and completely

irrelevant.  At the time of the contract, Symbolic could not have known that the market for the

subject Ferrari would rise unexpectedly as it did following the Concours d'Elegance auto

Gordon & Rees LLP
4675 MacArthur Court, Suite 800
Newport Beach, CA 92660

**SYMBOLIC INTERNATIONAL, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

1   auctions, and could not have anticipated that it would have been able to sell the car to a third

2   party for even the same amount as in the Contract with Plaintiff, let alone for more.  Symbolic

3   feared that the market would drop or at best remain flat.  Indeed, had the two other cars not sold,

4   Symbolic would have lost more than just its $300,000 profit.  In either event, Symbolic could

5   have just as easily suffered losses.  The fact that the market actually went up was simply

6   fortuitous, and not relevant to an analysis of liquidated damages validity under Civil Code

7   section 1671(b).  Accordingly, Symbolic was justified in retaining the Plaintiff's deposit as

8   liquidated damages.

9   **4.    Time Was of the Essence in the Contract.**

10  Plaintiff also claims that his failure to timely pay the balance of the purchase price is not

11  a material breach because the Contract did not contain an explicit "time of the essence" clause.

12  Again, Plaintiff has misinterpreted the applicable law.  Indeed, time is of the essence in any

13  contract where it appears from the terms of the contract, in light of *all the circumstances*, that

14  such was the intention of the parties.  *Henck v. Lake Hemet Water Co.* (1937) 9 Cal.2d 136, 143;

15  Rest. 2d Contracts § 242.  Thus, a contract need not contain an express "time of the essence"

16  clause if it appears from the language in the contract and the attendant circumstances that time

17  was of the essence.  *Id.*  Here, Plaintiff's contract was a simple one page affair.

18  At all times, Symbolic made it abundantly clear to Plaintiff that timing was critical on

19  this deal.  One offer letter, and one proposed contract were rejected because Plaintiff was

20  requesting time beyond August 13, 2007.  Plaintiff admits he knew that Symbolic was insistent

21  on this date.  He felt he could meet the deadline..  Symbolic entered the Contract only upon

22  Plaintiff's agreeing to Symbolic's timetable.  The Contract also specified a date certain by which

23  final payment needed to be made, August 13, 2007.  That date was always firm.  From the

24  inception of his conversations with Plaintiff, Grossman was explicit in telling Edwards that time

25  was of the essence in the transaction and that Grossman had no flexibility with respect to the

26  August 13, 2007 deadline for final payment because this was the date by which Symbolic had to

27  pay its customer to acquire the vehicle.  The lack of flexibility Symbolic had regarding this

28  timeline is evidenced by the fact that, on numerous occasions, Symbolic rejected Plaintiff's

Gordon & Rees LLP
4675 MacArthur Court, Suite 800
Newport Beach, CA 92660

1  proposed time deadlines for the final payment, insisting on the August 13, 2007 date.

2      Prior to settling on the August 13, 2007 date for final payment, the parties went through

3  negotiations regarding timing.  On July 8, 2007, Plaintiff provided an initial handwritten offer

4  letter in which he wrote that the balance of the purchase price was to be due in "30 working

5  days."  Symbolic unconditionally rejected this term.  That same day, Plaintiff sent another offer

6  letter (typewritten) in which this term was changed to "30 calendar days," a much shorter time

7  period in which Plaintiff had to pay the balance.  Symbolic agreed to these terms.  On July 9,

8  2007, Plaintiff sent a first draft contract, but the payment terms set forth therein were not the

9  terms to which Symbolic had agreed.  Symbolic rejected this draft.  Plaintiff then prepared what

10  would become the final contract for purchase and sale, dated July 11, 2007, which stated

11  explicitly that the balance of the purchase price was due from Plaintiff on or before the date

12  certain of August 13, 2007.

**D.   THE BALANCE OF THE CASES CITED BY PLAINTIFF, THOUGH APPLYING**
13
**THE CORRECT TEST, ARE OTHERWISE DISTINGUISHABLE OR SUPPORT**
14
**SYMBOLIC'S CONTENTION THAT THE LIQUIDATED DAMAGES**
15
**PROVISION WAS REASONABLE.**
16

17      Plaintiff provides a number of citations to cases which purportedly support his claim that

18  the liquidated damage provision in question was unreasonable under Civil Code section 1671,

19  subsection (b).  However, each of these cases is either distinguishable on its facts, or actually

20  support Symbolic's position that the liquidated damages figure in question was reasonable and

21  enforceable.

22      To begin, *Poseidon Development, Inc. v. Woodland Lane Estates, LLC* 152 Cal.App.4th

23  1106, 1113-14 (2007), is distinguishable on its facts because it does not involve a contract for

24  purchase and sale, and because the court's holding depends on contractual interpretation more

25  than an analysis of Civil Code section 1671.  The court held that a late-charge for non-payment

26  of the final balloon payment on a promissory note was an unenforceable penalty because, based

27  on the contractual language, the late-charge was only intended to be applied to late installment

28  payments rather than the final balloon payment.  *Id.*  This was a matter of contractual

Gordon & Rees LLP
4675 MacArthur Court, Suite 800
Newport Beach, CA  92660

14                                               Case No. 07CV1826-JMA
**SYMBOLIC INTERNATIONAL, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN**
**OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Gordon & Rees LLP
4675 MacArthur Court, Suite 800
Newport Beach, CA 92660

1   interpretation wherein the court determined that the late fee of $77,614.67 when applied to the

2   final balloon payment was outside the scope of the parties' intentions and far exceeded any

3   potential administrative costs that would result from the late payment, while the fee of $614.67

4   for a late installment payment was reasonable and within the parties intent.

5        Likewise, *Morris v. Redwood Empire Bancorp* 128 Cal.App.4th 1305, 1313 (2005) and

6   *Allen v. Smith* 94 Cal.App.4th 1270 (2002) are inapplicable.  In *Morris*, the court did not even

7   apply Civil Code section 1671, but rather held that the contract provision in question was not

8   even a liquidated damages provision.  In *Allen*, the court applied Civil Code section 1675, which

9   is only applicable to the purchase and sale of residential property.

10       Next, Plaintiff relies heavily on *Greentree Financial Group, Inc. v. Execute Sports, Inc.*

11  163 Cal.App.4th 495 (2008) ("*Greentree*"), which is also clearly distinguishable on its facts from

12  the matter at hand.  In *Greentree*, the parties entered into an agreement to settle a civil breach of

13  contract claim the plaintiff had brought against the defendant.  *Id*. at 498.  The parties settled for

14  $20,000 to be provided in two installments of $15,000 and $5,000.  *Id*.  The settlement

15  agreement provided that if the defendant defaulted on either payment, plaintiff would be entitled

16  to the entire amount originally demanded in the lawsuit ($45,000) plus interest and costs.  *Id*.

17  When the defendant defaulted, the court entered judgment for plaintiff in the amount of

18  $61,232.50.  *Id*.

19       The *Greentree* court held that this amounted to an unreasonable penalty because it was

20  excessive in light of the $20,000 settlement figure.  *Id*. at 499.  The court wrote that "the

21  $61,232.50 amount in the judgment bears no reasonable relationship to the range of actual

22  damages the parties could have anticipated from a breach of the stipulation to settle the dispute

23  for $20,000."  *Id*. at 500.  Rather, the judgment was more than triple the amount for which the

24  parties agreed to settle the case.  *Id*.

25       Applying this reasoning here, it is clear that *Greentree* does not control.  Here, the

26  parties' Contract for purchase and sale of the subject Ferrari provided for a $3,100,000 total

27  purchase price.  Applying *Greentree*, an unreasonable liquidated damages figure would be in the

28  neighborhood of $9,300,000 (triple the sale price).  Symbolic agrees that such a figure is

**SYMBOLIC INTERNATIONAL, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Gordon & Rees LLP
4675 MacArthur Court, Suite 800
Newport Beach, CA 92660

1  unreasonable, and would clearly constitute a penalty for failed performance.  However, here the

2  liquidated damages figure of $300,000 was less than 10% of the purchase price, and as already

3  discussed, represented a reasonable estimate of potential harm Symbolic might have suffered

4  from Plaintiff's breach.  Therefore, *Greentree* does not control.  *See also ECM Converting Co. v.*

5  *Corrigated Supplies Co. LLC*, 2009 U.S. Dist. Lexis 12424 [following *Greentree*, but outside the

6  context of a liquidated damages provision, and not applying Civil Code section 1671].

7      Like *Greentree*, the case of *Sybron Corp. v. Clark Hosp. Supply Corp.* (1978) 76

8  Cal.App.3d 896, 900 ("*Sybron*") involves a settlement agreement with what the court held to be

9  an unreasonable default provision.  First, *Sybron* was decided before the 1978 amendment of

10  Civil Code section 1671 took effect on July 1, 1978, and therefore does not apply to the extent it

11  applies the test found in the current section 1671's subsection (d).  However, *Greentree* notes

12  that *Sybron* is still good law to the extent it holds that judgments imposing a penalty for

13  defaulting on payments in a settlement agreement are inappropriate where the amount of

14  judgment bears no proportional relationship to the original settlement amount.  *Greentree*, 163

15  Cal.App.4th at 498.

16      In *Sybron*, plaintiff sued defendant for breach of contract seeking a sum certain, and

17  ultimately the parties settled for $72,000.  *Sybron*, 76 Cal.App.3d at 903.  Upon defendant's

18  default under the settlement agreement, the court entered judgment for $100,000 pursuant to the

19  parties liquidated damages provision.  Like *Greentree*, the court held that this was excessive in

20  light of the $72,000 settlement figure.  For the same reasons as *Greentree*, *Sybron* is inapplicable

21  to the matter here.

22      Finally, *Radisson Hotels Intern., Inc. v. Majestic Towers, Inc.* 488 F.Supp.2d 953 (C.D.

23  Cal. 2007), supports Symbolic's position that the liquidated damages provision was reasonable.

24  The court writes that the standard in Civil Code section 1671 subsection (b) "permits a

25  considerable degree of latitude in fixing the sum of liquidated damages…" *Id*. at 959.  The court

26  ultimately held that a liquidated damages clause in a licensing agreement which provided for

27  damages for termination of the agreement at twice the preceding year's royalty fees was

28  reasonable and enforceable.

**SYMBOLIC INTERNATIONAL, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

1    In sum, none of the cases cited by Plaintiff support his proposition that the liquidated

2  damages figure in the Contract.  The cases in which courts did not enforce liquidated damages

3  provisions involved grossly excessive figures which obviously bore no relation to the anticipated

4  harm.  Here, on the other hand, the liquidated damages figure was less than 10% of the total

5  purchase price, and was related to expected harm Symbolic stood to suffer if Plaintiff breached.

6  Further, Plaintiff himself testified that such an amount is reasonable in the industry, and

7  customary on the sale of such an expensive car.

8                                    **V.    <u>CONCLUSION</u>**

9    For all of the foregoing reasons, Plaintiff's motion for summary judgment should be

10  DENIED in its entirety.

11

12  DATED:  March 27, 2009                          GORDON & REES LLP

13                                       By:    /s/ Jeffrey A. Swedo
                                                 JEFFREY A. SWEDO
14                                               Attorneys for Defendant SYMBOLIC
                                                 INTERNATIONAL, INC.
15                                               Email:  *jswedo@gordonrees.com*

16

17

18

19

20

21

22

23

24

25

26

27

28

Gordon & Rees LLP
4675 MacArthur Court, Suite 800
Newport Beach, CA 92660

17                                                      Case No. 07CV1826-JMA

**SYMBOLIC INTERNATIONAL, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

## CERTIFICATE OF SERVICE

I hereby certify that on March 27, 2009, a copy of the foregoing document was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing

James W. Harris, Esq.                          Attorney for Plaintiff Richard Edwards,
Attorney at Law                                dba Eurotrading
3334 E. Pacific Coast Highway
Suite 402                                      Ph:     (949) 723-4339
Corona Del Mar, CA  92625                      Fx:     (949) 723-0455
Email: *jwhesqmaddog@sbcglobal.net*

/s/Jeffrey A. Swedo
JEFFREY A. SWEDO

Gordon & Rees LLP
4675 MacArthur Court, Suite 800
Newport Beach, CA 92660

18

Case No. 07CV1826-JMA

**SYMBOLIC INTERNATIONAL, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**