1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                         SOUTHERN DISTRICT OF CALIFORNIA

10

11  RICHARD EDWARDS, dba                    )    Case No. 07-CV-1826-JMA
    EUROTRADING,                            )
12                                          )    **ORDER: (1) GRANTING**
                              Plaintiff     )    **DEFENDANT'S MOTION FOR**
13  v.                                      )    **SUMMARY JUDGMENT [Doc. 31] AND**
                                            )    **(2) DENYING PLAINTIFF'S MOTION**
14  SYMBOLIC INTERNATIONAL, INC.,           )    **FOR SUMMARY JUDGMENT [Doc. 32]**
                                            )
15                            Defendant.    )
                                            )
16  ─────────────────────────────          )

17

18  **I. INTRODUCTION AND PROCEDURAL BACKGROUND**

19          This straightforward contract case involves a single issue -- whether the

20  $300,000 liquidated damages provision in a contract between the parties for the sale of

21  a Ferrari for $3.1 million is valid and enforceable, or whether it is unenforceable under

22  California Civil Code § 1671(b) because it "was unreasonable under the circumstances

23  existing at the time the contract was made." *Id.*

24          On March 10, 2009, Plaintiff Richard Edwards ("Edwards" or "Plaintiff") and

25  Defendant Symbolic International, Inc. ("Symbolic" or "Defendant") filed cross-motions

26  for summary judgment [Docs. 31, 32]. On March 27, 2009, each side filed an opposition

27  to the other side's motion for summary judgment ("MSJ") [Doc. Nos. 37, 38].  In

28  addition, Plaintiff filed a request for judicial notice [Doc. 38-4] and a statement of facts

    disputed by Plaintiff [Doc. 38-5].  On the same day, Defendant filed an opposition to

Plaintiff's statement of undisputed facts [Doc. 37], evidentiary objections to the Declaration of Richard Edwards ("Edwards Decl.") [Doc. 37-3], and a request for judicial notice [Doc. 37-4]. The parties also filed a supplemental joint stipulation of facts [Doc. 38-7] on March 27, 2009. On April 3, 2009, the parties filed replies in support of their motions for summary judgment [Docs. 39-41].

On April 27, 2009, the Court heard oral argument on the parties' cross-motions for summary judgment. Upon due consideration of the written and oral arguments of the parties and the record herein, the Court GRANTS Defendant's Motion for Summary Judgment [Doc. 31] and DENIES Plaintiff's Motion for Summary Judgment [Doc. 32].[1]

## II. FACTUAL BACKGROUND

Plaintiff Richard Edwards is a dealer of vintage and high end cars and is actively engaged in the purchase, resale, brokering and collection of such cars. Edwards Decl., ¶ 3. Plaintiff admits that his primary source of income for the past 25 years has been the buying and selling of cars. Edwards Decl., ¶ 3, 5; Edwards Deposition Transcript attached as Ex. 12 to Symbolic's Index of Exhibits in Support of ("Edwards Depo. Tr.") at 11:4-8. Edwards admits that he has been involved with over 50 transactions involving exotic or vintage cars valued at over $1 million (Edwards Depo. Tr. at 23-24) and that he intended to buy the Ferrari at issue solely for commercial, rather than personal purposes, in order to sell it for a profit. *Id.* at 15-16. Defendant Symbolic is an automobile dealer located in La Jolla which is also in the business of buying and selling rare and vintage cars for profit. Declaration of Elliott Grossman ("Grossman Decl."), ¶ 2; Declaration of Patrick Van Schoote ("Van Schoote Decl."), ¶¶ 2-3.

In early July, 2007, Edwards told Symbolic he was interested in acquiring a 1959

---

[1] As set forth above, the parties each made requests for judicial notice of various documentary evidence [Doc. Nos. 37-4 (Def.) and 38-4 (Pltff.)], and Defendant also lodged objections to the Edwards Declaration [Doc. 37-3], discussed further at § VIII, *infra*. Where the Court makes reference to a particular document, the parties may assume the Court has granted judicial notice thereof for the purposes of summary judgment. For documents not cited in the following discussion, the Court has declined to rule on the relevant request for judicial notice.

Ferrari 250 GT Spyder California LWB (long wheel base).  Edwards Decl., ¶ 6. Edwards spoke to Symbolic salesperson Elliot Grossman ("Grossman"), who told Edwards that Symbolic did not own such a car, but that it had a customer who did.  *Id.*  Grossman offered to have Symbolic approach the customer to inquire whether he was interested in selling his 1959 Ferrari Spyder.  *Id.*  The customer agreed to sell his 1959 Ferrari Spyder to Symbolic for a total acquisition price of $2,785,000 including a $200,000 non-refundable deposit, with the balance of the purchase price to be paid by August 13, 2007.  Van Schoote Decl., ¶ 7; Hancock Contract, Def's Ex. 10.  After Symbolic came to terms with the owner to purchase the Ferrari, Grossman began negotiating the sale of the Ferrari with Edwards.  Grossman Decl., ¶ 11.

On July 8, 2007, Grossman told Edwards that the Ferrari could be purchased through Symbolic for $3,100,000.  Edwards' Decl., ¶ 7.  Edwards sent a handwritten letter to Grossman the same day, stating that he agreed to purchase the Ferrari for $3.1 million, subject to it passing inspection, that he agreed to pay "a non-refundable deposit of $300,000" within 5 business days of the inspection, and that he would pay Symbolic the balance of $2.8 million within 30 working days of the inspection.  *See* 7/8/07 handwritten letter from Edwards to Grossman, Def's Ex. 1.  The parties then had back-and-forth negotiations regarding the sale terms, specifically regarding the date when the final balance payment was due.

Symbolic agreed to the purchase price of $3.1 million and the non-refundable deposit of $300,000, but rejected Edwards' proposed timeline.  Grossman Decl., ¶¶ 13-16.  Grossman informed Edwards that the "30-working days" he proposed for payment of the balance was not acceptable.  *Id.,* ¶ 14.  In response, Edwards prepared a second letter, which was typed on July 8, 2007.  *Id.*   In this letter, Edwards proposed that the balance of $2.8 million be paid within 30 "calendar days" of the inspection.  *See* 7/8/07 Letter from Edwards to Grossman, Pltff's Ex. A in support of Plaintiff's MSJ; Grossman Decl., ¶ 14.  Symbolic rejected these payment terms and the first draft of the contract that contained them.  Grossman Decl., ¶ 15; first draft of contract, Def's Ex. 3.  Edwards ultimately agreed to Symbolic's time requirements regarding payment of the balance of

1    the purchase price.  Grossman Decl., ¶ 16.  Edwards had his solicitor of 20 years, Bill

2    Ranson, prepare the final version of the contract, which was printed on Plaintiff's

3    Eurotrading letterhead.  Edwards Depo. Tr. at 36.

4          The final version of the contract, executed on July 11, 2007, provided that

5    following a satisfactory inspection of the Ferrari, Edwards was to pay Symbolic a non-

6    refundable deposit of $300,000 by July 18, 2007.  *See* 7/11/07 Contract, attached as

7    Pltff's Ex. B ("Contract").  The Contract also provided that Plaintiff was obligated to pay

8    the balance of the purchase price -- $2,800,000 -- by August 13, 2007.  *Id.*  Finally, the

9    Contract contained the following liquidated damages provision drafted by Plaintiff: "***In***

10   ***the event that the Buyer fails to complete upon being given notice to complete***

11   ***then the Seller will retain the deposit by way of liquidated damages for breach of***

12   ***contract***."  *Id.*[2]

13         Edwards informed Symbolic by letter dated July 12, 2007 that he had completed

14   his inspection, that the Ferrari was satisfactory, and that he would proceed with his

15   purchase.  7/12/07 Letter, Def's Ex. 5.  Edwards then paid Symbolic the $300,000 non-

16   refundable deposit.  Def's Ex. 6; Edwards Depo. Tr. at 71.  For the next several weeks,

17   Grossman reminded Edwards that the $2.8 million balance needed to be paid on time.

18   Edwards Depo. Tr. at 107-108.  On August 6, 2007, Symbolic sent Edwards a written

19   "Notice to Complete" advising him that the $2,800,000 balance was due on August 13,

20   2007 and reiterating that if Plaintiff did not make this payment by that date, as agreed in

21   the Contract, Symbolic would retain the $300,000 deposit as liquidated damages.  Pltff's

22   Ex. D, Notice to Complete dated 8/6/07.

23         Edwards did not pay the $2.8 million balance on August 13, 2007.  Grossman

24   Decl., ¶ 28.  On that date, Plaintiff informed Symbolic by handwritten letter that he did

25   not have the funds to complete the transaction on that day.  Pltff's Ex. E.  However,

26   Edwards stated that he "fully intend[ed] to honor our agreement," that he was able to

27   complete the transaction by August 22, 2007, and asked Symbolic for "a little patience."

28

---

[2] Emphasis here, as throughout, has been added unless otherwise indicated.

07cv1826

1   *Id.*

2   The next day, on August 14, 2007, Symbolic advised Edwards by letter that he

3   was in breach of the contract, that Symbolic was now free to sell the Ferrari to an

4   alternate buyer, and that Symbolic would retain the $300,000 non-refundable deposit as

5   liquidated damages.  Pltff's Ex. F, 8/14/07 Letter from Symbolic's counsel to Edwards.

6   However, Symbolic told Edwards he could still purchase the Ferrari if he would: (1) sign

7   a new contract; (2) immediately remit another $300,000 non-refundable deposit; and (3)

8   agree to a new purchase balance of $2.6 million (for a total purchase price of $3.2

9   million) to be paid by August 27, 2007.  *Id.*; Pltff's Ex. G, draft amended contract.

10   On August 21, 2007, Edwards told Symbolic (through counsel) that he was

11   prepared to remit the $2.8 million balance due on the original contract.  Edwards'

12   Declaration in Opposition to Def's MSJ ("Edwards' Opp Decl."), ¶ 14.  On August 22,

13   2007, Symbolic told Edwards it was considering his offer and would reply the next day.

14   Plaintiff's MSJ at 4. On August 23, 2007, Symbolic told Edwards the Ferrari had been

15   sold. *Id.*  Symbolic admits that the car was sold on or about August 23, 2007 to a third

16   party for $3.5 million.  Joint Stipulation of Undisputed Facts, ¶ 2 [Doc. 38-7].  On

17   September 18, 2007, Edwards filed the instant action seeking return of the $300,000

18   deposit, asserting claims for (1) rescission/restitution and (2) unjust enrichment.

19   **III. LEGAL STANDARDS**

20   Summary judgment is proper where the pleadings and materials demonstrate

21   "there is no genuine issue as to any material fact and . . . the moving party is entitled to

22   judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S.

23   317, 322 (1986).  A material issue of fact is a question the trier of fact must answer to

24   determine the rights of the parties under the applicable substantive law.  *Anderson v.*

25   *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine "if the evidence is

26   such that a reasonable jury could return a verdict for the nonmoving party."  *Id.* at 248.

27   Summary judgment may be granted in favor of a defendant on an ultimate issue of fact

28   where the defendant carries its burden of "pointing out to the district court that there is

an absence of evidence to support the [plaintiff's] case."  *Celotex*, 477 U.S. at 325; *see*

1     *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000).

2         The moving party bears "the initial responsibility of informing the district court of

3 the basis for its motion." *Celotex*, 477 U.S. at 323. To satisfy this burden, the moving

4 party must demonstrate that no genuine issue of material fact exists for trial. *Id.* at 322.

5 However, the moving party is not required to negate those portions of the non-moving

6 party's claim on which the non-moving party bears the burden of proof. *Id.* at 323. To

7 withstand a motion for summary judgment, the non-movant must then show that there

8 are genuine factual issues which can only be resolved by the trier of fact. *Reese v.*

9 *Jefferson School Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir. 2000) (citing Fed. R. Civ. P.

10 56; *Celotex*, 477 U.S. at 323). The nonmoving party may not rely on the pleadings but

11 must present specific facts creating a genuine issue of material fact. *Nissan Fire*, 210

12 F.3d at 1103. The inferences to be drawn from the facts must be viewed in a light most

13 favorable to the party opposing the motion, but conclusory allegations as to ultimate

14 facts are not adequate to defeat summary judgment. *Gibson v. County of Washoe,*

15 *Nev.*, 290 F.3d 1175, 1180 (9th Cir. 2002). The Court is not required "to scour the

16 record in search of a genuine issue of triable fact," *Keenan v. Allan*, 91 F.3d 1275, 1279

17 (9th Cir. 1996), but rather "may limit its review to the documents submitted for purposes

18 of summary judgment and those parts of the record specifically referenced therein."

19 *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001).

20
21 **IV. PLAINTIFF'S FAILURE TO PAY THE BALANCE OF THE PURCHASE PRICE ON THE DATE SPECIFIED CONSTITUTES BREACH OF CONTRACT**

22
23         The one-page Contract prepared by Edwards clearly states that Edwards shall:

24 (1) pay a $300,000 deposit by July 18, 2009; (2) pay the $2.8 million balance of the

25 purchase price by August 13, 2007; and (3) if he fails to complete upon being given

26 notice to complete, then Symbolic will "retain the deposit by way of liquidated damages

27 for breach of contract." Contract, Pltff's Ex. B. These dates, and specifically the date

28 on which the balance of the purchase price was due, were heavily negotiated by the

parties.

6

1    It is undisputed that Edwards failed to pay the balance of the purchase price on

2    August 13, 2007.  Plaintiff claims that his failure to pay the balance on the date specified

3    in the Contract was not a material breach because the Contract did not contain an

4    explicit "time of the essence" clause.  He also claims, "[i]t was always my understanding

5    that I would forfeit my deposit if I walked away from this sales transaction," but "[i]t was

6    never my intention that Symbolic would retain my deposit as liquidated damages if it

7    sold the Ferrari to another for more money."  Edwards Decl., ¶ 16.  However, Edwards

8    drafted the contract and it does not state that he only forfeits the deposit if he "walks

9    away" from the sale; instead, it states that the balance shall be paid on August 13, and

10   that Symbolic will retain the deposit as liquidated damages if he breaches the Contract.

11   Contract, Pltff's Ex. B.

12   If a contract specifies a time for performance, the contractual obligations must be

13   performed on the date specified.  *See* George W. Cuney and Donna C. Looper, CEB,

14   California Law of Contracts, § 8.8 (2008) ("contractual obligations must be performed

15   either ***at a time the contract specifies***, or, if no time is specified, within a reasonable

16   time.").  Indeed, when a contract requires performance "at a fixed time, no demand is

17   necessary to put the promisor in default.  Suit may be brought at once." *See* B.E. Witkin,

18   Summary of California Law, § 760 (10th ed. 2008).   This is particularly true when the

19   contractual obligation to be performed is the payment of money, which must be

20   "performed immediately." *See* Civil Code  § 1657 (if the obligation "is in its nature

21   capable of being done instantly -- as, for example, if it consists in the payment of money

22   only -- it must be performed immediately upon the thing to be done being exactly

23   ascertained.")

24   Time is of the essence in all contracts where the circumstances indicate that

25   performance on a particular day is important. *Henck v. Lake Hemet Water Co.*, 9

26   Cal.2d 136, 143 (1937).  Thus, a contract does not need to contain an express "time of

27   the essence" clause when it appears from the language in the contract and the

28   circumstances that time was of the essence. *Id.*  Here, Symbolic repeatedly stated that

     timing was critical on this sale, and the parties negotiated back-and-forth regarding the

date for final payment. The date the parties finally agreed upon (August 13, 2007) is specified in the Contract.  Therefore, Plaintiff's failure to pay the balance of the contract price by this specified date constitutes breach of contract.

**V.    THE LIQUIDATED DAMAGES PROVISION IS VALID AND ENFORCEABLE**

   **A. Legal Standard**

   Prior to 1978, liquidated damages provisions were on the whole disfavored.  *See* B.E. Witkin, Summary of California Law, § 503 (10th ed. 2008). The former version of Cal. Civ. Code § 1671 provided: "The parties to a contract may agree therein upon an amount which shall be presumed to be the amount of damage sustained by a breach thereof, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage."  *See Silva & Hill Const. Co. v. Employers Mut. Liab. Ins. Co.*, 19 Cal. App.3d 914, 919, fn. 2 (1971).  However, a California Law Revision Commission was subsequently formed on liquidated damages and determined that "liquidated damage provisions are useful and should be encouraged."  B.E. Witkin, Summary of California Law, § 533 (10th ed. 2008) (citing 13 Cal. Law. Rev. Com. Reports 1740, 1741).  The Commission's report was adopted by the state legislature in 1977 and therefore is given substantial weight by the courts in interpreting section 1671. CEB, California Law of Contracts, § 10.41 (2008).

   In 1977, the Legislature revised Civil Code § 1671 (effective July 1978), so that liquidated damages provisions were presumptively valid instead of presumptively invalid.  *Weber, Lipshie & Co. v. Christian*, 52 Cal.App.4th 645, 654 (1997).  The current test, which applies to non-consumer contracts, including the one here, is set forth in California Civil Code § 1671(b) and provides that "a provision in a contract liquidating the damages for the breach of the contract is ***valid*** unless the party seeking to invalidate the provision establishes that the provision was ***unreasonable under the***

*circumstances existing at the time the contract was made*."[3]  Importantly, the Law Revision Committee Comments to § 1671 state that the validity of the liquidated damages provision depends upon its reasonableness at the time the contract was made and not as it appears in retrospect.  Accordingly, "the amount of damages *actually suffered has no bearing* on the validity of the liquidated damages provision."  This "new" test places the burden on the party challenging the liquidated damages provision and eliminates the requirement to show that fixing actual damages was impracticable or extremely difficult.

The Legislature did not do away entirely with the stricter test set forth in former § 1671. In the amended statute, subsection (d) sets forth the former test, but the statute expressly provides that this test shall only apply in two types of consumer contracts enumerated in subsection (c): (1) contracts for the sale or rental of personal property to be used primarily for the buyer's personal, family, or household purposes; and (2) contracts for the lease of real property.

The parties do not dispute that Cal. Civ. Code § 1671(b) applies, rather than § 1671(d).  This is not a consumer contract -- Plaintiff admits that he is a car dealer and purchased the Ferrari only for commercial purposes in order to resell it for a profit. However, Plaintiff cites and relies heavily on numerous cases which either predate the 1978 amendment and apply the former test for validity of liquidated damages, or which involve a consumer case under current subsection (d).  These citations and references are accordingly inappropriate and the Court will disregard them to the extent they

_____

[3] California Commercial Code § 2718, cited by Plaintiff, provides that "damages for breach by either party may be liquidated in the agreement subject to and in compliance with Section 1671 of the Civil Code.  If the agreement provides for liquidation of damages, and such provision does *not* comply with Section 1671 of the Civil Code, remedy may be had as provided in this division." Cal. U. Com. Code § 2718 (2008).  As the Court finds that the liquidated damages provision in the Contract complies with Cal. Civ. Code § 1671, it need not reach the question of awarding a remedy under Commercial Code § 2718.

07cv1826

1   discuss the pre-1978 test or subsection (d) test.[4]

2      The burden of proving that the liquidated damages clause was unreasonable at

3   the time the contract was made is placed on the party seeking to invalidate the clause --

4   here, Plaintiff.  *See Radisson Hotels Int'l, Inc. v. Majestic Towers, Inc.*, 488 F.Supp.2d

5   953, 959 (C.D. Cal., 2007); *Weber*, 52 Cal.App.4th at 654.  Thus, parties to a contract

6   have a:

7          considerable degree of latitude in fixing the sum of liquidated
           damages. . . [g]iven the current statutory policy which favors
8          the validity of such agreements except in certain consumer
           transactions, and which casts the burden on the opposing
9          party to prove unreasonableness and requires only that the
           liquidated damages bear a reasonable relationship to the
10         range of harm that might reasonably be anticipated.

11  *Radisson*, 488 F.Supp.2d at 959, *quoting Weber,* 52 Cal.App.4th at 656.

12     A liquidated damages clause becomes an unenforceable penalty only "if it bears

13  no reasonable relationship to the range of actual damages that the parties could have

14  anticipated would flow from a breach."  *See Ridgley v. Topa Thrift and Loan Ass'n.*, 17

15  Cal. 4th 970, 977 (1998).  The amount set as liquidated damages "must represent the

16  result of a reasonable endeavor by the parties to estimate a fair average compensation

17  for any loss that may be sustained."  *Id.,* quoting *Garrett v. Coast & Southern Fed. Sav.*

18  *& Loan Assn.*, 9 Cal.3d 731, 739 (1973).  While Defendant suggests that this

19  "reasonable endeavor" test may only apply to consumer contracts, Def's Opp to Pltff's

20  MSJ at 11, even assuming the test is applicable here, it "does not require both parties to

21  a [] contract to expressly negotiate the amount of liquidated damages." *Utility*

22  *Consumers*, 135 Cal.App.4th at 1035. No actual negotiation regarding the amount of the

23

24     [4] The following cases cited by Plaintiff were decided prior to the 1978 amendment
    of Civil Code § 1671, and therefore are inapplicable: *Silva & Hill Const. Co.*, 19
25  Cal.App.3d 914; *Feary v. Aaron Burglar Alarm, Inc.*, 32 Cal.App.3d 553 (1973); *United*
    *Sav. and Loan Ass'n of Calif. v. Reeder Development Corp.*, 57 Cal.App.3d 282 (1976).
26

27     Likewise, the following cases apply the test for a consumer contract, as set forth
    in Cal. Civ. Code § 1671(d), which is inapplicable here: *Utility Consumers' Action*
28  *Network, Inc. v. AT&T Broadband of Southern Cal., Inc.* ("*Utility Consumers*"), 135
    Cal.App.4th 1023, 1035-38 (2006); *Irwin v. Mascott*, 96 F.Supp.2d 968 (N.D. Cal. 1999);
    *Donald v. Golden 1 Credit Union*, 839 F.Supp. 1394 (E.D. Cal. 1993).

07cv1826

liquidated damages need take place, as long as the liquidated damages figure is reasonable in light of the potential harm anticipated at the time of contracting. *Id.* at 1035-38. Finally, "[t]he question whether a contractual provision is an unenforceable liquidated damages provision is one for the court." *Morris v. Redwood Empire Bancorp*, 128 Cal. App. 4th 1305, 1314 (2005).

### B. The Liquidated Damages Provision

The one-page Contract drafted by Plaintiff states that following a satisfactory inspection of the car, Edwards shall pay a $300,000 deposit by July 18, 2009, and the balance of $2,800,000 by August 13, 2007. Pltff's Ex. B. The liquidated damages provision provides that: "In the event that the Buyer fails to complete upon being given notice to complete then the Seller will retain the deposit by way of liquidated damages for breach of contract." *Id.*

### C. Analysis

For the reasons set forth below, the Court finds that Plaintiff has not met his burden to show that the liquidated damages provision was unreasonable "at the time the contract was made." Plaintiff has not shown that the amount set as liquidated damages bore no reasonable relation to the range of harm the parties could reasonably have anticipated would flow from a breach at the time the contract was made. *Weber*, 52 Cal.App. 4th at 656; *Ridgley*, 17 Cal.4th at 977.

### 1. A non-refundable deposit of 10% is a standard figure in similar vintage car sale contracts

The Law Revision Commission Comments to § 1671 state in regard to deposits that "[i]f the parties provide that the deposit shall be liquidated damages for breach of the contract, the question whether the deposit may be retained in case of a breach is determined in accordance with the standard provided in subdivision (b)." Here, the contract drafted by Plaintiff specifically provides that in case of breach, Symbolic "will ***retain the deposit by way of liquidated damages*** for breach of contract." Contract, Pltff's Ex. B.

11

07cv1826

The fact that a deposit or liquidated damages figure is set at an amount standard in the industry may support a finding of reasonableness.  *See Hong v. Somerset Assoc.*, 161 Cal.App.3d 111, 116 (1984) (noting that the liquidated damages figure of 2% of the purchase price of an apartment complex was standard in commercial real estate transactions).  Here, the liquidated damages figure of $300,000 was approximately 10% of the $3,100,000 contracted sales price.  Plaintiff admits that "***a non-refundable deposit of 10% is customary***" for vintage cars in this price range (although he now claims it is not reasonable as a liquidated damages amount, despite having drafted the final version of the Contract, including the liquidated damages provision).  Plaintiff's Opposition to Defendant's Separate Statement of Undisputed Material Facts ("Pltff's Opp to Defs' SUMF") [Doc. 38-5], at 2; Edwards' Decl., ¶ 28.  Plaintiff specifically testified at deposition that he thought the $300,000 non-refundable deposit amount was a reasonable figure in this case, considering it was approximately 10% of the purchase price of the car.[5]  Indeed, Symbolic had to pay a $200,000 non-refundable deposit to the VIP owner of the Ferrari, which was also approximately 10% of the purchase price. Hancock Contract, Def's Ex. 10.  These facts weigh in favor of the reasonableness of the liquidated damages provision.

### 2. Both parties were represented by lawyers and were sophisticated

The Law Revision Commission Comments to the 1978 Amendment to Cal. Civ. § 1671 state that among the factors to be considered in determining whether a liquidated

---

[5] "Q: As a buyer of these exotic cars... ***is there a kind of a range for what the deposit money normally is*** for these deals? Is it like 5 percent, 10 percent, 15 percent?

A: I think you have to show a reasonable commitment that you want to do the deal.  I think ***it's probably a minimum 10 percent***.  Anywhere upwards."

"Q: . . .What's the most you've requested of somebody who was buying a car from you?

A.. . . On a million-dollar plus car, ***I think 10% is a fair commitment***.  Generally on something less than a million dollars, I'd probably ask for 20 percent."

"Q: ***You thought it [the $300,000 deposit amount] was reasonable considering it was 10% of the value of the car***?

A: ***Yeah***."

Edwards Depo Tr. 117-118.

07cv1826

damages provision is reasonable are "the relative equality of the bargaining power of the parties, [and] whether the parties were represented by lawyers at the time the contract was made." Here, both sides were represented by attorneys.  In fact, Edward's long-time solicitor drafted the Contract.  The parties' bargaining power was equal, and they negotiated back-and-forth over the terms of the Contract, including specifically the date final payment would be due.  Plaintiff admitted that he is sophisticated in buying and selling high end and vintage cars, that it is his primary source of income, and that he has been involved with over 50 transactions involving cars worth over $1 million.  These facts weigh in favor of the reasonableness of the liquidated damages provision.

### 3. The amount of liquidated damages reasonably reflected Defendant's real risk and anticipated damages at the time of contracting

 Plaintiff claims that the $300,000 liquidated damages amount is unreasonable because the parties did not actually discuss the damages Symbolic might suffer if he breached the Contract and did not negotiate the amount of the deposit, and because it is "not a reflection of any endeavor by either party to estimate a fair compensation to [Symbolic] should [Edwards] not purchase the Ferrari."  Pltff's Opp at 8.  However, the "reasonable endeavor test does not require both parties to a [] contract to expressly negotiate the amount of liquidated damages." *Utility Consumers*, 135 Cal.App.4th at 1035.  Instead, the issue is whether the liquidated damages figure is reasonable in light of the potential harm anticipated at the time of contracting.  *Id.* at 1035-38.

As the Law Revision Committee's Comments make clear, "[u]nlike subdivision (d), subdivision (b) gives the parties ***considerable leeway*** in determining the damages for breach.  All the circumstances existing at the time of the making of the contract are considered, including the relationship that the damages provided in the contract bear to the range of harm that reasonably could be anticipated at the time of the making of the contract."  At the time the Contract between Edwards and Symbolic was made, Symbolic faced real risks that it could suffer substantial losses if Plaintiff breached the Contract, as well as lost profits.  If Symbolic's celebrity customer allowed Symbolic to back out of the deal, Symbolic would lose the $200,000 non-refundable deposit it had

paid to acquire the car.  Furthermore, this repeat customer could require Symbolic to purchase the car, and Symbolic would be stuck paying $2,785,000 to buy the Ferrari, which is more than Symbolic believed it was worth.[6]  Symbolic also stood to incur carrying costs and interest of over $25,000 per month until it sold the car.  In addition, Symbolic would lose its anticipated profit of approximately $300,000.  Symbolic claims that it only proceeded with the deal in reliance on the fact that it "could fall back on Plaintiff's deposit as a loss cushion if Plaintiff did not complete the deal."  Defs' Opp to Pltff's MSJ at 10; Van Schoote Decl., ¶ 8. The Court finds that these factors weigh in favor of a finding that the liquidated damages figure was reasonable in light of the circumstances existing at the time of the Contract and that Plaintiff has not carried his burden to establish otherwise under § 1671(b).

### 4. Actual damages are not relevant

Edwards' primary argument is that the amount of liquidated damages is not reasonable in relation to the damages Symbolic actually suffered, because it was able to sell the Ferrari for more than it would have under the contract with Edwards. Pltff's MSJ at 6-8.  However, as the Law Revision Commission Comments to § 1671 state, "the validity of the liquidated damages provision depends upon its reasonableness at

---

[6] The parties argue extensively over what the Ferrari was actually worth. Symbolic contends that at the time of the Contract, it believed the car was worth only $2.4 to $2.8 million, and that it feared it would have to sell the car at a loss if Plaintiff breached.  Defs' MSJ at 9.  Plaintiff, on the other hand, contends that he believed there was a rising market for the Ferrari and that it was worth at least $3.5 million.  Pltff's MSJ at 10. As it turned out, there was a rise in the market price for this type of car.  However, Symbolic argues that this market change, which allowed Symbolic to sell the Ferrari to a third party buyer despite Plaintiff's breach, was not foreseeable when the parties entered into the Contract.  (see Def's MSJ at 5, referring to auctions of two California Spyders six weeks after negotiations between Edwards and Symbolic began that unexpectedly drove up the value of the subject car).  In any event, this Court does not need to decide what the actual value of the Ferrari was.  Plaintiff contracted to purchase the Ferrari for $3.1 million and if he had paid the balance due by August 13, 2007, Symbolic was legally obligated to turn the Ferrari over to him.  However, at the time of contracting, Symbolic faced real risks if Plaintiff breached the Contract, as discussed in the text, which demonstrate that the liquidated damages figure was reasonable under the circumstances existing at the time the Contract was made.

14

the time the contract was made and ***not as it appears in retrospect***.  Accordingly, the amount of damages ***actually suffered has no bearing*** on the validity of the liquidated damages provision." *See also Weber*, 52 Cal.App.4th at 654 (same).  The cases Plaintiff cites in support of this argument are either inapplicable because they were decided prior to the amended version of  § 1671 (*see* note 4, *supra*), or are distinguishable.[7]  For example, Plaintiff cites *Radisson*, 488 F.Supp.2d 953, for the proposition that "there must be a reasonable relationship between the amount to be paid and the actual damages ***sustained***."  Pltff's MSJ at 7.  *Radisson* says no such thing.  In fact, the case clearly states that liquidated damages provisions are presumed valid, that there is "a considerable degree of latitude in fixing the sum of liquidated damages," and that a liquidated damage provision is only invalid if it bears no reasonable relationship to "the range of actual damages that the parties ***could have anticipated*** would flow from the breach."  *Id.* at 959. Indeed, in upholding liquidated damages in the amount of $668,181.91, the court concluded that Radisson's mitigation efforts were not relevant to liquidated damages, as "one of the very purposes of liquidated damages is to allow the parties to avoid the cost, difficulty and delay of proving damages."  *Id.* at 963, quoting B.E. Witkin, Summary of California Law, § 533 (10th ed. 2005).

## VI. PLAINTIFF'S CLAIM FOR RESCISSION/RESTITUTION

---

[7] *See, e.g., Poseidon Development, Inc. v. Woodland Lane Estates*, LLC, 152 Cal.App.4th 1106, 1113-14 (2007) (finding that a late charge for nonpayment of final balloon payment on a promissory note was an unenforceable penalty because, based on the contractual language, the late charge was only intended to be applied to the late installment payments rather than the final balloon payment); *Morris*, 128 Cal.App.4th at 1313 (holding that contract provision in question was not a liquidated damages provision, and not applying Civ. Code § 1671); *Allen v. Smith*, 94 Cal.App.4th 1270 (2002) (court applied Civ. Code  § 1675, which is only applicable to purchase and sale of real property, rather than  Civ. Code  § 1671); *Greentree Fin. Group, Inc. v. Execute Sports, Inc.*, 163 Cal.App.4th 495 (2008) (liquidated damages provision applicable in case of default on payment of settlement funds was over three times total amount of settlement and was thus unreasonable penalty); *Sybron Corp. v. Clark Hosp. Supply Corp.*, 76 Cal.App.3d 896, 900 (1978) (holding that judgment which imposes penalty for defaulting on payments in settlement agreement is improper if judgment bears no reasonable relationship to original settlement amount).

07cv1826

Plaintiff states generally in his first cause of action for rescission and restitution that the liquidated damages provision constitutes an unlawful penalty and requests that the Court not enforce it.  Compl., ¶¶ 27-35; Pltf's Reply to MSJ at 14.  Plaintiff admits in his Opposition that this claim relies on a finding that the liquidated damages provision constitutes an unreasonable and unenforceable penalty under Civil Code § 1671.  Pltf's Opp at 14.  As discussed in § V.A, *supra*, Civil Code § 1671(b) provides that liquidated damages provisions are presumptively valid unless the party seeking to invalidate the provision shows the provision was unreasonable in light of the circumstances at the time of contracting.  For the reasons set forth above, Plaintiff has not met this burden.  Therefore, Plaintiff's first cause of action for rescission/restitution fails and the Court **GRANTS** Defendant's motion for summary judgment on this claim.

## VII. PLAINTIFF'S CLAIM FOR UNJUST ENRICHMENT

California law recognizes a cause of action for unjust enrichment:

> Under the law of restitution, an individual may be required to make restitution if he is unjustly enriched at the expense of another.  A person is enriched if he receives a benefit at another's expense.  The term "benefit" denotes any form of advantage." . . . Even when a person has received a benefit from another, he is required to make restitution "only if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for him to retain it.

*Ghirardo v. Antonioli*, 14 Cal.4th 39, 51 (1996) (internal citations omitted).  Plaintiff claims that Defendant was unjustly enriched by retaining Edwards' $300,000 deposit because Symbolic subsequently sold the car to another buyer and thus suffered "no damages."  Compl., ¶¶ 36-45; Pltf's MSJ at 4.

"However, as a matter of law, a quasi-contract action for unjust enrichment does not lie where, as here, express binding agreements exist and define the parties' rights." *Cal. Med. Ass'n v. Aetna U.S. Healthcare of Cal.*, 94 Cal. App. 4th 151, 172 (2001).  Plaintiff essentially argues that it is not fair or equitable to allow Defendant to retain the deposit when it was able to re-sell the car for even a greater profit.  However, "[w]hen parties have an actual contract covering a subject, a court cannot -- not even under the guise of equity jurisprudence -- substitute the court's own concepts of fairness regarding

07cv1826

1  that subject in place of the parties' own contract."  *Id.*, citing *Hedging Concepts, Inc. v.*

2  *First Alliance Mortgage Co.*, 41 Cal. App. 4th 1410, 1420 (1996); *Marina Tenants Assn.*

3  *v. Deauville Marina Dev. Co.*, 181 Cal.App.3d 122, 134 (1986) (the court "cannot create

4  new rights under the guise of doing equity").

5         Here, the parties formed a valid contract.  The Contract provided that Symbolic

6  would retain Edwards' deposit "by way of liquidated damages for breach of contract."

7  Edwards breached the contract by failing to pay the balance when it was due under the

8  Contract.  The Court held above in § V that the liquidated damages provision is valid

9  and enforceable.  Accordingly, Plaintiff is not entitled to an equitable remedy for unjust

10  enrichment.

11         Plaintiff argues that the Court should consider the fact that Defendant essentially

12  mitigated its damages by subsequently selling the Ferrari for more money, after Plaintiff

13  breached the contract.  However, a party's mitigation efforts are not "relevant to the

14  liquidated damages analysis."  *Radisson*, 488 F.supp.2d at 963.  In fact, "one of the very

15  purposes of liquidated damages is to allow '[t]he parties [to] avoid the cost, difficulty,

16  and delay of proving damages."  *Id.*, quoting B.E. Witkin, Summary of California Law, §

17  533 (10th ed. 2005) (internal citation omitted).  Requiting mitigation would "wholly

18  undermine the rationale for employing liquidated damages provisions in the first place."

19  *Radisson*, 488 F.supp.2d at 963.  As discussed in § V, in cases where § 1671(b)

20  applies, the court is to consider only the circumstances in existence at the time the

21  contract was made, and not as it appears in retrospect.  Therefore, Plaintiff's claim for

22  unjust enrichment fails and the Court **GRANTS** Defendant's motion for summary

23  judgment on this claim.

24  **VIII. EVIDENTIARY ISSUES**

25         Defendants' evidentiary objections to the Edwards Declaration are moot.  Even if

26  all of Plaintiff's evidence was admissible, for the reasons discussed above, Plaintiff has

27  not met his burden to show that the liquidated damages provision was unreasonable as

28  a matter of law.  Likewise, while Plaintiff disputes certain facts set forth in Defendant's

Statement of Undisputed Facts (*See* Pltff's Opp to Defs' SUMF [Doc. 38-5]), even if

1  Plaintiff's opposing evidence were taken as true, this would not affect the Court's

2  conclusion.

3  **IX. CONCLUSION**

4      For the reasons set forth herein, Plaintiff has not met his burden to show that the

5  liquidated damages provision in the Contract between the parties was unreasonable

6  under the circumstances existing at the time the Contract was made.  Accordingly, the

7  Court GRANTS Defendant's Motion for Summary Judgment [Doc. 31] and DENIES

8  Plaintiff's Motion for Summary Judgment [Doc. 32].  The Court orders the Clerk of Court

9  to enter judgment in favor of Defendant, close the case file and terminate this case.

10  **IT IS SO ORDERED**

11  DATED:  April 30, 2009

12

13                                              _____
                                                Jan M. Adler
14                                              U.S. Magistrate Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28

18